**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHERN SEASON, INC. ) | |
| ) | Case No: 16-80558 |
| Debtor. ) | |
| ) | Chapter 11 |
| ) | |

**MOTION TO (I) APPROVE PRIVATE SALE OF CERTAIN PERSONAL PROPERTY AND (II) TRANSFER ANY AND ALL LIENS OR ENCUMBRANCES TO SALE PROCEEDS**

NOW COMES Southern Season, Inc. (the "Debtor"), pursuant to § 363 of the Bankruptcy Code, Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure, and moves this Court to enter an order approving a private sale of certain excess personal property and transferring any liens to proceeds. In support of this motion, the Debtor states as follows:

1. On June 24, 2016 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its assets as debtor-in-possession. On July 8, 2016, an Official Committee of Unsecured Creditors (the "Committee") was appointed.

2. The Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§151, 157 and 1334 and Local Rule 83.11 adopted by the United States District Court for the Middle District of North Carolina, and this is a core proceeding within 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. On or about August 8, 2016, John Fioretti of ABTV was appointed as the Debtor's Chief Restructuring Officer (the "**CRO**"). The CRO has the full and complete authority to manage the affairs of the Debtor.

1

4.  On August 21, 2016, this Court entered its Order (I) Approving the Asset Purchase Agreement between the Debtor and Calvert Retail, L.P., (II) Authorizing the Sale of Certain of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of a Certain Lease and (IV) Granting Related Relief [Docket No. 215] (the "Sale Order").

5.  On August 22, 2016, the Debtor and Calvert Retail, L.P. ("Calvert") closed the sale of substantially all of the Debtor's assets pursuant to the Sale Order and that certain Asset Purchase Agreement between Calvert and the Debtor dated August 17, 2016 (the "APA").  The transfer of the Sale Assets occurred at 12:01 a.m. Eastern time on August 23, 2016, under Section 4.1 of the APA.

6.  Under the Sale Order and the APA, the Debtor retained ownership of, and did not sell, certain Excluded Assets (as defined in the APA).  The Excluded Assets include, but were not limited to, (i) tangible assets, except for inventory, located at the Seller's stores in Raleigh, NC and Asheville, NC, and (ii) all tangible assets, including inventory, located at the Seller's store in Charleston, SC (the "Supplemental Sale Assets").

7.  As set forth in the Sale Agreement attached hereto as <u>Exhibit A</u>, the Debtor has agreed to sell the Supplemental Sale Assets to Calvert for $30,000, subject to the approval of this Court.

8.  The Supplemental Sale Assets are subject to the secured claim of SummitBridge National Investments IV, LLC ("SummitBridge").  However, the Supplemental Sale Assets constitute Carve-Out Assets under decretal paragraph 29 of the Sale Order, to be used and distributed as more particularly set forth therein.  Therefore, the Debtor is authorized to sell the

2

Supplemental Sale Assets free and clear of any and all liens, encumbrances or other interests pursuant to 11 U.S.C. § 363(f).

9. In order to avoid the significant continuing administrative expense costs associated with storing the Supplemental Sale Assets in certain of the Debtor's leased premises, the Debtor has permitted Calvert to remove and take possession of the Supplemental Sale Assets in advance of the consummation of the transactions contemplated in the Sale Agreement.

10. The Sale Agreement provides that the Debtor shall not take any action that may in any manner adversely affect the Supplemental Sale Assets prior to the closing of the sale. Subject to the preceding sentence, the Supplemental Sale Assets shall be sold "as is, where is."

11. The Debtor consulted with the Committee and Iron Horse Auctioneers to determine whether the highest and best value for the Supplemental Sale Assets would be obtained through private sale or through including the Supplemental Sale Assets. Iron Horse Auctioneers indicated that the purchase price agreed to with Calvert was higher than they would expect to receive if the Supplemental Sale Assets were sold at public auction.

12. The Debtor, the Committee and SummitBridge support the sale of the Supplemental Sale Assets to Calvert, and believe the sale is in the best interests of the Debtor's bankruptcy estate.

13. The Debtor requests authority to close the sale under the Sale Agreement, and shall turn over the sale proceeds to counsel for the Committee, to be used and distributed pursuant to the terms of decretal paragraph 29 in the Sale Order.

WHEREFORE, the Debtor prays the Court for the following relief:

1. Authorizing the Debtor to sell the Supplemental Sale Assets to Calvert for $30,000, pursuant to the terms and conditions of the Sale Agreement attached hereto;

2. Transferring any lien, claims, encumbrances or interests to the sale proceeds;

3. Authorizing the Debtor to deliver the sale proceeds to counsel for the Committee, to be used and distributed pursuant to the terms of decretal paragraph 29 in the Sale Order; and

4. Granting such other relief as the Court deems necessary and appropriate.

Respectfully submitted on behalf of the Debtor, this the 26th day of September 2016.

>HUTSON LAW OFFICE, P.A.
>
> /s/ Richard M. Hutson, II
> Richard M. Hutson, II, NCSB #2282
> hutson@hhplaw.com
> 302 E. Pettigrew St., Suite B-206
> PO Drawer 2252-A
> Durham, NC 27702
>
> and
>
> NORTHEN BLUE, LLP
>
> /s/ John Paul H. Cournoyer
> John Paul H. Cournoyer, NCSB #42224
> jpc@nbfirm.com
> 1414 Raleigh Road, Suite 435
> Chapel Hill, NC 27517
> Telephone:  919-968-4441
>
> *Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE:  ) | |
| ) | |
| SOUTHERN SEASON, INC.  ) | |
| ) | Case No: 16-80558 |
| Debtor.  ) | |
| ) | Chapter 11 |
| ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by automatic electronic service on the following:

| | |
|---|---|
| William P. Miller<br>Bankruptcy Administrator | Craig D. Mills<br>Obo Summit Bridge |
| Brian R. Anderson<br>Obo Beach Brookgreen, LLC | John C. Bircher, III<br>Obo William Robert Bizzell |
| Gerald A. Jeutter, Jr.<br>Obo Southern Season Warehouse Partners, LLC | Todd A. Jones<br>Obo Five Points Baking Company, LLC |
| Frank N. White<br>Obo Sysco Raleigh, LLC | Robert E. Boydoh, Jr.<br>Obo Pate Dawson Company |
| Cindy G. Oliver and Kate Ellis<br>Obo FreshPoint North Carolina, Inc. T/A     FreshPoint Raleigh | William P. Janvier and William F. Braziel, III<br>Obo LM Retail, LLC |
| William C. Smith, Jr.<br>Obo Silk Route Capital Corporation | Charles M. Ivey, III; Dirk W. Siegmund; and Justin W. Kay<br>Obo Unsecured Creditors' Committee |
| Cindy G. Oliver and Kate Ellis<br>Obo Limehouse Produce Co., Inc. | John H. Capitano<br>Obo Madison University Mall, LLC |
| Robert A. Mays<br>Obo Thomas W. Youngblood | Terri L. Gardner and Teresa K.D. Currier<br>Obo Calvert Retail, LLP |
| J. Caleb Thomas<br>Obo Riverplace Holdings, LLC | Trawick H. Stubbs, Jr. and Joseph Z. Frost<br>Obo The Select Group |

and by U.S. Mail upon the following:

| | |
|---|---|
| Christopher P. Schueller<br>Timothy P. Palmer<br>Buchanan Ingersoll & Rooney, PC<br>One Oxford Centre<br>301 Grant Street, 20th Floor<br>Pittsburgh, PA  15219<br>Obo SummitBridge Nat'l Credit Invests. IV LLC | Kristen E. Burgers<br>Hirschler Fleischer, P.C.<br>8270 Greensboro Drive, Suite 700<br>Tysons, VA 22102<br>Obo LM Retail, LLC |

| | |
|---|---|
| US Foods, Inc.<br>Attn: Managing Agent<br>1500 NC Hwy. 39<br>Zebulon, NC  27597 | Varilease<br>Attn: Managing Agent<br>6340 South 3000 East, Suite 400<br>Salt Lake City, UT  84121 |
| Best Logistics<br>Attn: Managing Agent<br>PO Box 336<br>Kernersville, NC  27285-0336 | Christy Graves<br>Chapel Hill Toffee<br>Attn: Managing Agent<br>218 Old Forest Creek Dr.<br>Chapel Hill, NC  27514 |
| Jessica McCall<br>Counter Culture Coffee, I<br>Attn: Managing Agent<br>PO Box 890605<br>Charlotte, NC  28289-0605 | Corey Mallard<br>Dixon Hughes Goodman LLP<br>Attn: Managing Agent<br>PO BOX 602828<br>Charlotte, NC  28260-2828 |
| Loretta Manning<br>First Source<br>Attn: Managing Agent<br>3612 La Grange Parkway<br>Toano, VA 23168 | Sandi Arthur<br>Southeastern Paper Co.<br>Attn: Managing Agent<br>PO Box 890672<br>Charlotte, NC 28289 |
| J. Ramirez<br>Gorilla<br>Attn: Managing Agent<br>111 W. Jackson Blvd., Suite 300<br>Chicago, IL  60604 | George Scala<br>Haddon House<br>Attn: Managing Agent<br>PO Box 907<br>Medford, NJ  08055 |
| Leonard Way<br>Ocean Boulevard Properties, LP<br>Attn: Managing Agent<br>PO Box 607<br>Charleston, SC  27402 | Ron Offir<br>Offir Consulting, LLC<br>Attn: Managing Agent<br>12 Mary Jane Ln.<br>Westport, CT  06880 |
| Monica Lomax<br>Packages, Inc.<br>Attn: Managing Agent<br>PO Box 1065<br>Denton, NC  27239 | Cathryn Stark<br>Papyrus-Recycled Greeting<br>Attn: Managing Agent<br>One American Road<br>Cleveland, OH  44144-2398 |
| Megan Barrett<br>Salem Baking Company<br>Attn: Managing Agent<br>PO Box 890950<br>Charlotte, NC  28289 | The Ultimate Software Group, Inc.<br>c/o Maria T. Tran, Corporate Counsel<br>1485 North Park Drive<br>Weston, FL  33326 |
| Jennifer Garofalo<br>Willow Specialties<br>Attn: Managing Agent<br>Eastside Bus. Ctr., 34 CLI<br>Batavia, NY  14020-2821 | Wusthof-Trident of Americ<br>Attn: Managing Agent<br>333 Wilson Avenue<br>Norwalk, CT  06854 |
| Windstream / Paetec<br>Attn: Managing Agent<br>PO Box 9001013<br>Louisville, KY  40290 | |

This the 26th day of September 2016.

                                      NORTHEN BLUE, LLP

                                      <u>/s/ John Paul H. Cournoyer</u>
                                      John Paul H. Cournoyer, NCSB #42224
                                      jpc@nbfirm.com
                                      1414 Raleigh Road, Suite 435
                                      Chapel Hill, NC 27517
                                      Telephone:  919-968-4441
                                      *Counsel for the Debtor*

Exhibit A

**SALE AGREEMENT**

THIS SALE AGREEMENT (this "Agreement"), is made as of this 22nd day of September, 2016, by and between Calvert Retail, LP (the "Purchaser"), and SSI Liquidation, Inc. f/k/a Southern Season, Inc. (the "Seller").

**W I T N E S S E T H**

WHEREAS, Seller has filed a voluntary petition with the United States Bankruptcy Court for the Middle District of North Carolina (the "Bankruptcy Court") for relief under Chapter 11, title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code");

WHEREAS, Purchaser previously purchased from Seller substantially all of Seller's assets, free and clear of all claims, liens or interests, pursuant to the terms of a certain Asset Purchase Agreement (the "APA") dated August 17, 2016, and the Order of the Bankruptcy Court approving such sale (Dkt. No. 215) (the "Sale Order");

WHEREAS, under the APA, Seller retained ownership of, and did not sell, certain Excluded Assets (as defined in the APA);

WHEREAS, the Excluded Assets include, but were not limited to, (i) tangible assets, except for inventory, located at the Seller's stores in Raleigh, NC and Asheville, NC, and (ii) all tangible assets, including inventory, located at the Seller's store in Charleston, SC (the "Supplemental Sale Assets"); and

WHEREAS, in order to avoid the continuing administrative expense costs associated with storing the Supplemental Sale Assets in certain of Seller's leased premises, the Seller has permitted Purchaser to remove and take possession of the Supplemental Sale Assets in advance of the consummation of the transactions contemplated hereby.

NOW, THEREFORE, for and in consideration of the representations, warranties, covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1. <u>Sale of Supplemental Sale Assets.</u> In exchange for the Purchase Price (as hereinafter defined), Seller shall sell and Purchaser shall purchase and acquire the Supplemental Sale Assets. Purchaser shall not assume any liabilities or obligations of Seller pursuant to the transactions contemplated hereby.

2. <u>Bankruptcy Court.</u> This Agreement is subject to the approval of the U.S. Bankruptcy Court of the Middle District of North Carolina (the "Bankruptcy Court"). The parties agree that the Bankruptcy Court shall retain the exclusive and sole jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or the breach hereof. The parties consent to the core jurisdiction of the Bankruptcy Court, to the constitutional authority of the Bankruptcy Court to enter a final judgment, and agree to have

waived any right to a jury trial in connection with any disputes related to or arising out of this Agreement.

3.   Price. The purchase price for the Supplemental Sale Assets shall be $30,000 (the "Purchase Price"). All taxes, federal, state, or local, now imposed or hereafter becoming effective upon the sale of goods during the term of this agreement shall be borne by Seller. The Purchase Price shall be placed in the trust account of counsel for the Purchaser within three (3) business days of the execution of this Agreement, and shall be remitted to the Seller at the Closing.

4.   Delivery. The Supplemental Sale Assets shall be delivered FOB their current location.

5.   Closing. Subject to Section 2, the closing of the transaction contemplated hereby will take place (the "Closing" the "Closing Date") by no later than three (3) business days following entry of an Order approving this Agreement. The Closing will take place at a location to be mutually agreed upon by Purchaser and Seller. The transfer of the Supplemental Sale Assets shall be effective for all purposes as of 12:01 a.m. eastern time on the day following the Closing Date.

6.   Ancillary Agreements and Actions. At the Closing:

a.   Seller shall deliver to Purchaser a duly executed bill of sale, dated the Closing Date, transferring to Purchaser all right, title and interest in and to the Supplemental Sale Assets free and clear of all claims or liens, without exception or condition, in substantially the form attached hereto as Exhibit A.

b.   Seller shall deliver to Purchaser other instruments or documents or certificates or affidavits that may be required by any local, state or federal taxing or other authority, as Purchaser may reasonably request to fully effect the transfer of the Supplemental Sale Assets and to confer upon Purchaser the benefits contemplated by this Agreement, and any transfer agreements with any local, state or federal authority or agency, necessary to perfect title to any of the Supplemental Sale Assets in Purchaser.

c.   Purchaser shall deliver the Purchase Price to Seller in accordance with wire instructions provided by Seller to Purchaser, or by check.

7.   Warranties and Covenants of Seller. Seller warrants that the Supplemental Sale Assets shall be sold and delivered free and clear of any claims or liens to the fullest extent possible under 11 U.S.C. § 363(f). Seller shall not take any action that may in any manner adversely affect the Supplemental Sale Assets prior to Closing. Subject to the preceding sentence, the Supplemental Sale Assets are sold "as is, where is."

8.   Applicable Law. To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without giving effect to rules governing the conflict of laws.

9. <u>Assignment and Delegation.</u> This Agreement is not assignable, and the performance of the duties hereunder is not delegable by either party without the express written consent of the other party.

10. <u>Merger Clause</u>. This instrument constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This agreement can only be modified in a writing signed by the parties hereto or their duly authorized agents.

11. <u>Execution.</u> This Agreement may be executed in one or more counterparts (whether manually signed or by facsimile or other electronic means), each such counterpart shall be deemed an original, and all such counterparts shall constitute one and the same agreement.

12. <u>Further Assurances</u>.  Purchaser and Seller shall, from time-to-time after the Closing, without further consideration, execute and deliver such instruments and take such further actions as may be reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated hereby.

[signatures on following page]

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement as of the day and year first above written.

PURCHASER:

CALVERT RETAIL, LP

    By:    Calvert Retail, Inc.
    Its:    General Partner

By: _____
Name: Eric Brinsfield

SELLER:

SSI LIQUIDATION, INC f/k/a SOUTHERN SEASON, INC.

By: _____

Name: John Fioretti
Title: CRO

3

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement as of the day and year first above written.

PURCHASER:

CALVERT RETAIL, LP

   By: Calvert Retail, Inc.
   Its: General Partner

By: _____
Name: Eric Brinsfield

SELLER:

SSI LIQUIDATION, INC f/k/a SOUTHERN SEASON, INC.

By: _____

Name: John Fioretti
Title: CRO

4

EXHIBIT A

FORM OF BILL OF SALE

See attached.

# BILL OF SALE

This BILL OF SALE (this "Bill of Sale"), dated as of September __, 2016, is made by SSI Liquidation, Inc. f/k/a Southern Season, Inc.("Seller") in favor of Calvert Retail, L.P. ("Purchaser").

WITNESSETH:

WHEREAS, Seller and Purchaser have entered into that certain Asset Purchase Agreement, dated as of September __, 2016, (the "Purchase Agreement"), pursuant to which, among other things, Seller has agreed to sell, assign, transfer, convey and deliver to Buyer, and Buyer has agreed to purchase the Supplemental Sale Assets; and

WHEREAS, Seller filed a voluntary petition in Bankruptcy *In re: Southern Season* with the United States Bankruptcy Court for the Middle District of North Carolina (the "Bankruptcy Court") for relief under Chapter 11, Title 11, United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and

WHEREAS, the Bankruptcy Court approved such sale and purchase of the Supplemental Sale Assets pursuant to that certain Order dated September __, 2016; and

WHEREAS, Seller has agreed to enter into this Bill of Sale pursuant to the Purchase Agreement to transfer all of Seller's rights, title and interests in and to the Supplemental Sale Assets to Purchaser.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein and in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. <u>Definitions</u>.  All capitalized terms used in this Bill of Sale but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2. <u>Sale</u>.  Seller hereby sells, assigns, transfers, conveys and delivers to Purchaser all of Seller's rights, title and interests in and to the Supplemental Sale Assets, including, without limitation, all items listed on Schedule "A" attached hereto, to have and to hold the same unto Purchaser, its successors and assigns, free and clear of all Liens, to the greatest extent permitted by the Bankruptcy Code, without exception or condition.

3. <u>Terms of the Purchase Agreement</u>.  The parties hereto acknowledge and agree that any representations, warranties, covenants, and agreements contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4. <u>Further Actions</u>.  At any time and from time to time, from and after the date hereof, each party hereto shall, at its own expense, execute and deliver such other instruments of transfer or assumption and take such other actions, in each case, as such other party may reasonably request

to consummate more effectively the transfers and assumptions contemplated by this Bill of Sale.

5. Delivery; Originals.  A signed copy of this Bill of Sale delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Bill of Sale.

6. Successors and Assigns. This Bill of Sale shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

7. Governing Law. To the extent not governed by the Bankruptcy Code, this Bill of Sale shall be governed by and construed in accordance with the laws of the State of North Carolina, without giving effect to rules governing the conflict of laws.

[SIGNATURE PAGE FOLLOWS]

95345.2

IN WITNESS WHEREOF, the party hereto has executed this Bill of Sale as of the date first above written.

SELLER:

SSI LIQUIDATION, INC f/k/a SOUTHERN SEASON, INC.

By: _____

Name: John Fioretti
Title:  CRO

[SIGNATURE PAGE TO BILL OF SALE]

EXHIBIT A
CERTAIN SUPPLENTAL SALE ASSETS

(i) tangible assets, except for inventory, located at the Seller's stores in Raleigh, NC and Asheville, NC

and

(ii) all tangible assets, including inventory, located at the Seller's store in Charleston, SC.

95345.2